Good morning. My name is Peter Speier. I'm appearing on behalf of Veronica Garcia-Juarez, who is the petitioner in this matter. This is an immigration case. I would like to reserve a couple of minutes for rebuttal. If there is no cognizable liberty interest, as the government has argued in their case, forgive me, I'm old though I am, I'm new to this procedure, so I should probably start with a statement of the case and then move forward. We're pretty familiar with the case. Well then, if there is no cognizable liberty interest, as the government has argued in this situation, I really don't need to waste the court's time and I can sit down. But what I wanted to explain is that I believe there is a cognizable liberty interest, a due process right to have notice and the opportunity to be heard. As I argued in my brief, the then-attorney for my client put in a motion to be relieved. My client did not respond to that motion, neither did the government, by the way. And that motion also was a motion to set, to reset a master calendar to hear his motion to be relieved. No one responded to that. In normal circumstance, at least one opportunity... I'm not sure, you know, I've never, I never appeared in immigration court, so I don't really know the ins and outs of how things are set on calendar in the immigration court. But I gather from this experience here that when a petitioner or when an applicant files a motion, they don't set a specific date and time for the motion to be heard. No, they don't set a specific date and time for the motion to be heard. The court would set that. If the court thought there was a need to hear argument, right? Right, but... And here the court didn't think there was any need to hear argument. But the normal situation with a motion, if it's unopposed, would be that the judge would grant the motion. Really? Very frequently. Frequently, yes. Very frequently. I mean, at least it's a reasonable interpretation. Wouldn't it be a reasonable expectation for the judge to see, so it becomes moot, if an opposition is filed and then I'll grant the motion? I... That's what I'm arguing that is not possible, but that shouldn't be a reasonable expectation, especially if a person who has had multiple interpreters gets this English language document that she may or may not understand. But she knew the deadline. I mean, she was at the hearing where what the deadline was, was translated. Correct. And she was there with her attorney, and the attorney set up the situation to have her motions be presented by, I believe it was the end of May, about May 28th, and then had some cooperation problems. The government had argued that she didn't do anything. I would like to point out, page 35 in the things, because the BIA and the government both said she didn't even bother to get biometrics. That's not true. The biometrics, this is page 35, shows the biometrics. She was present at the hearing, and she had the services of a translator, and she knew that May 28th was the deadline to file. So what the IJ did was to defer any ruling on the motion to withdraw and the request to continue until after May 28th, right? So your due process complaint stems from the IJ's handling of the motion to withdraw, but he didn't rule on that. He just deferred it until after the May 28th deadline came and went? Was that what happened? Exactly. He mooted it, and thereby ruled that she was deportable in absentia, because she hadn't fulfilled, she hadn't put in all of the papers that she is charged with the ultimate responsibility for having, even though the attorney... But she failed to file by May 28th, which was the deadline, and so it was deemed as a withdrawal of her application. What's wrong with that? Well, if she were unrepresented, and I don't have this in my brief, but if she were not represented under 8 CFR 1003.25, there is a whole procedure that a court would have to go through to ask her consent to be deported voluntarily, and that was not followed. By the time the judge got to mooting the motion to withdraw, the woman was effectively unrepresented, and nobody asked her whether she agreed or consented or anything. Nobody asked her anything. They just said goodbye. When somebody is represented by counsel, whether in a court of law or in an immigration court or some other administrative agency, it's generally been my experience that courts think twice about letting a lawyer off the hook. Yes. Because it's usually detrimental to the client. Right. And it didn't surprise me here that, as Judge Nguyen just pointed out, that the immigration judge waited to see, waited until after the 28th of May before doing anything. Well, by waiting until the... He kept the lawyer on the hook. The lawyer still had an ethical responsibility to try and help his client. Well, I personally don't buy into the Lassada throw-your-lawyer-under-the-bus theory of the Board of Immigration Appeals, and I think that this lawyer did what he was supposed to do under the California rules of professional conduct in attempting to withdraw. So I think that the judge basically was effectively clearing his calendar, getting rid of his docket, without giving the woman the notice and the opportunity to find other counsel, to do something, to do it, and normally would have had that notice and an opportunity. I submit that she should. Explain to me, what is your theory of what would have... If she had been unrepresented, what would... I missed that. What would have happened? If she had been unrepresented under 8 CFR 1003.25, and I apologize, this is not in my brief, subsection B, 1 through 8, you get to number 6. A statement that the alien understands the consequences of the stipulated request, this would be for stipulated deportation, and that the alien entered the request voluntarily, knowingly, and intelligently. These requirements for a stipulation of deportation argue strongly that there's a liberty interest at stake. That's what I'm saying. But there was no stipulation? There was no stipulated deportation, but it happened by default, that the woman probably couldn't even understand that that was a consequence, even though there was a rote description of that on the record by the judge. You understand that you are personally responsible for this, and whether you have a lawyer or not, blah, blah, blah. But the fact of the matter is that the woman has an interpreter telling her those things and is terrified more than I am at the moment. Even if you assume that there's a property interest or a liberty interest in play, because we've said that immigrants are entitled to a full and fair hearing, the IJ had a certain amount of discretion here. He determined that there was no, that the petition wasn't filed, or the application for relief, or what was it, cancellation of removal? Cancellation of removal, yes, your honor. Hadn't been filed. He set a deadline. They have control of their own calendars. It happens all the time in courts. I understand.  He does his level best to set that before a court and gives the court the opportunity to let the client do something to correct it, and the court totally ignores it. That, to me, is the reason I'm here. Okay. All right, you want to save one minute for rebuttal? Okay, thank you, counsel. Good morning, your honors. Kelly Walls for the Attorney General. The agency rationally deemed Ms. Garcia Juarez's cancellation of removal application abandoned three weeks after she failed to file her application within the 120-day period granted by the immigration judge, and she failed to communicate with her attorney during that period. Further, in the absence of a liberty interest in the discretionary relief of cancellation of removal and any evidence of prejudice, she cannot establish a due process violation resulting from the immigration judge's decision to deem her application abandoned or decline to hold a hearing on prior counsel's motion to withdraw. Let me ask you, why do we even have to think about this in terms of a due process? I would argue that it is, in fact, an abuse of discretion argument as far as the judge's ability to control his own calendar and docket. Mr. Speier raised a due process argument, and our response to that would be there is no liberty interest in discretionary relief, either in the relief itself or in the process of applying for that. And in any event, even if Ms. Garcia Juarez did identify a cognizable liberty interest, she identified no prejudice. So really, this is an abuse of discretion argument sort of cloaked in a due process context. And in this case— I had not understood. If the judge had ruled upon that, the argument I think is now being made that things would have been different because she would have been treated differently as an unrepresented litigant. Explain—I did not understand that from the paper. No, and actually, I would respectfully disagree with my colleague, Mr. Speier, that that stipulated removal process is a very different process than being placed into removal proceedings. If the immigration judge had, in fact, ruled on the motion to withdraw and granted prior counsel's request, then Ms. Garcia Juarez would have been unrepresented at that time. But you can't go back in time and erase the earlier proceedings where she was represented and at which time she conceded removability. So she said, yes, I have no right to be in this country, and so I am seeking cancellation of removal. At that point, she was already—she conceded she was removal and that— So the granting of the motion would have simply granted that motion, and then she still would have had to respond either to other counsel or by herself. Exactly. She either— Well, in fact, by not ruling on the motion immediately, he—the immigration judge gave her an extra three weeks. So she had 120 days plus three weeks in order to either decide to cooperate with prior counsel, file an application pro se, obtain a different attorney. She had many options. Really, this rests on Ms. Garcia Juarez's failure to communicate with her attorney and to actively participate in her own removal proceedings. Well, I think one of the arguments that Petitioner raises is kind of the potential unfairness of it, because in the motion to withdraw, counsel alerted the court to the fact that there was a lot—there were a lot of difficulties apparently communicating with her, and he specifically asked as part of that motion to have the matter rescheduled to the master calendar. So I'm not familiar with how the IJs usually run their calendar, but that's an option for the IJ to at least rule on that portion of the motion, right? Put the matter back on the master calendar, figure out what's going on, and give her an opportunity to seek other counsel to assist her? Sure, and I would say that goes back to the judge's discretion in maintaining his docket and his calendar and what he chooses to do. Given that— His or her? His or her. Yes, thank you. Given that—in this case, his—given that Ms. Garcia Juarez was not communicating with her attorney at that point, I think what the immigration judge decided is that setting a calendar—master calendar hearing for her to appear pro se, giving her notice on her own, was perhaps not going to be effective. Under the federal regulations, the immigration judge is able to deem an application abandoned if it's not filed in time. Ms. Garcia Juarez was present when an interpreter told her that the application was due on May 28th. She had all the notice. This was really—the ball was in her court, and she failed to either communicate with her attorney or the immigration court. And she could have filed a motion for extension of time— Sure, she could have. —to have counsel on an appearance on her behalf or whatever. Sure, she just did not communicate with anybody. She just didn't do anything. And so that's really—you know, her failure to be a participant in her own removal proceedings is why we're here today. And I would argue that the judge was well within his discretion in finding her application abandoned after nearly five months of her failing to file it, and that there is no liberty interest that would—or prejudice that would require the case to go back for another hearing. Okay. And I would just like to mention, I know that the court has been concerned in the past about mediation in these types of cases. She's been here for a long time, four U.S. citizen children. I believe three, but maybe four at this point. I did inquire with the Department of Homeland Security two weeks ago, and they affirmed that they did, in fact, screen the case in August after the court issued its notice. I again inquired at that point and was in contact with Mr. Speier, and they again declined to exercise discretion in this case. So I do not believe mediation would be appropriate at this time. But of course, the court has the discretion to do that. If there are no further questions, the respondent simply requests that this petition for review be denied. On the issue of prejudice, there is nothing in the record to show the prejudice other than the fact that the order of deportation happened. But I find that tautological, because she wasn't able to put anything into the record because she didn't have a hearing to be able to put anything into the record. So that in itself, to me, shows a form of prejudice. And as I stated, the worst prejudice is the order of deportation. Thank you. Thank you, counsel. We appreciate your arguments and the matters submitted.
judges: Motz, Paez, Nguyen